**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT CHMIELOWICZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 21 CV 5432 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| HORACE F. MILLER, | ) | |
| GERARDO MADRIGAL, and | ) | |
| CITY OF CHICAGO, | ) | Magistrate Judge Gabriel Fuentes |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS MADRIGAL AND CITY OF**
**CHICAGO'S MOTION TO DISMISS**

Plaintiff, Scott Chmielowicz, by and through his attorneys, responds as follows to
Defendants Madrigal and City of Chicago's motion to dismiss:

Plaintiff Scott Chmielowicz was riding his bike on September 26, 2019, when Defendant
Horace Miller abruptly merged into traffic colliding with Plaintiff and causing Plaintiff to crash.
Amended Complaint at Law, Dkt. 1-1, ¶ 1-4. Plaintiff sustained serious injuries and was taken to
the hospital. Id., ¶ 11, 26. Defendant Miller committed several traffic violations and was the
party at fault for the crash. Id., ¶ 6, 20. Defendant Gerardo Madrigal, a Chicago police officer,
responded to the scene of the crash and spoke with Defendant Miller, a former Chicago police
officer. Id., ¶ 7-10. Rather than properly investigating and accurately reporting the incident,
Madrgial and Miller conspired together to claim that Chmielowicz caused the crash and violated
various traffic laws. Id., ¶ 11-15. Miller and Madrigal committed these acts so that former officer
Miller could escape criminal and civil liability for the accident. Id., ¶ 18-20. Because Madrigal
and Miller had formed an agreement to blame Chmielowicz for the crash, Madrigal did not
obtain Chmielowicz's account of what happened and denied him proper protection and

1

enforcement of the law. Madrigal issued traffic citations to Chmielowicz even though there was no legal or factual basis for the citations, pursuant to Miller and Madrigal's conspiracy to fault Chmielowicz and exonerate Madrigal. Id., ¶ 13-15, 18-20. Chmielowicz attended court on the baseless traffic citations and they were dismissed, terminating them in his favor. ¶ 14, 21.

### 1. Motion to Dismiss Standard

The relevant question at the motion to dismiss stage is not whether the plaintiff will ultimately prevail on the merits, but whether the complaint is sufficient to cross the federal pleading threshold. Skinner v. Switzer, 562 U.S. 521, 529–30 (2011). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Skinner, 562 U.S. at 530. Pursuant to the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007); that is, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Assessing plausibility "is context specific, requiring the reviewing court to draw on its experience and common sense." Iqbal, 556 U.S. at 663-64, citing Twombly, 550 U.S. at 556. In determining the sufficiency of a complaint under this standard, courts "accept the complaint's well-pleaded facts as true and construe the allegations in the light most favorable to the plaintiff." Thulin v. Shopko Stores Operating Co., LLC, 771 F.3d 994, 997 (7th Cir.2014).

### 2. Plaintiff Has Sufficiently Pleaded an Equal Protection Class-of-One Claim

An equal protection class-of-one claim, like the one Plaintiff alleges, is based on a public official singling out an individual for differential treatment under the law for no rational reason. Swanson v. City of Chetek, 719 F.3d 780, 783 (7th Cir. 2013); see also Geinosky v. City of

Chicago, 675 F.3d 743, 747 (7th Cir. 2012) ("We have held that class-of-one claims can be brought based on allegations of the irrational or malicious application of law enforcement powers.") The Supreme Court has held that it recognizes "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Frederickson v. Landeros, 943 F.3d 1054, 1060. "The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive ... comes down hard on a hapless private citizen.'" Frederickson, 943 F.3d at 1060, citing Swanson, 719 F.3d at 784. Thus, a class of one claim alleges that the plaintiff was subjected to differential treatment arbitrarily, irrationally and/or for an improper motive, rather than on the basis of race, gender, or other protected class membership. Swanson, 719 F.3d at 783. See also Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012) ("The Equal Protection Clause has also come to be understood to protect individuals against purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes.") To evaluate this type of equal protection claim, a court must ask: has the plaintiff adequately alleged that the state actor intentionally discriminated against him without any rational basis for the differential treatment? Frederickson, 943 F.3d at 1060.

Contrary to Defendants' argument, Plaintiff is not required to identify similarly-situated individuals to maintain an equal protection claim. The Seventh Circuit has recently held that the identification of a similarly situated comparator is not required by the established case law. Frederickson, 943 F.3d at 1062. Class-of-one complaints typically allege that a defendant has either a personal stake or a hostile relationship with the plaintiff, and that this stake or history

demonstrates both the lack of a rational basis for the action and animus. Id. Although similarly-situated individuals that were treated differently than the plaintiff can provide evidence of the irrational or animus-based treatment (Swanson, 719 F.3d at 784), the plaintiff is not required to provide the names and descriptions of comparators at the pleading stage. Geinosky, 675 F.3d at 748 ("Geinosky's general allegation that defendants 'intentionally treated plaintiff differently than others similarly situated' is sufficient here, where the alleged facts so clearly suggest harassment by public officials that has no conceivable legitimate purpose.") Moreover, if animus is present, it is redundant to require plaintiff to identify individual comparators. Frederickson, 943 F.3d at 1062; Swanson, 719 F.3d at 784. The Seventh Circuit has found that animus and a lack of a rational basis were sufficient to sustain an equal protection claim without the use of a comparator in cases involving plaintiffs who were subjected to arbitrary and unjustified exercises of government power. Frederickson, 943 F.3d at 1062. Defendants' floodgates argument (at p. 6-7) is unavailing and has been rejected by this Circuit. Geinosky, 675 F.3d at 748-49.

"The question at the heart of any class-of-one case is whether the defendant arbitrarily used the powers given to him by the state to deny equal treatment to the plaintiff." Frederickson, 943 F.3d at 1063. That is precisely what Defendant Officer Madrigal did to Plaintiff when he refused to properly investigate the traffic collision and falsely reported that Plaintiff violated traffic laws and caused the crash to protect former-officer Miller, the true perpetrator. When Madrigal responded, investigated and reported the traffic crash, he failed to protect and serve Chmielowicz, the injured victim in the collision, and added insult to injury when he charged Plaintiff with several traffic violations. Defendant Madrigal used his powers for an improper purpose, to protect a fellow former officer from culpability. Like the plaintiff in Swanson, Chmielowicz has alleged that Miller and Madrigal singled him out for differential hostile

treatment, has alleged a plausible motive and has detailed a series of actions by Defendants that appear illegitimate on their face. Swanson, 719 F.3d at 785. Furthermore, Plaintiff has alleged that he was treated differently than similarly-situated individuals, i.e. injured victims of a traffic collision. Am. Comp., ¶ 29. Plaintiff is not required to specifically identify these individuals at the pleading stage, prior to discovery.

Defendants argue that police officers, such as Defendant Madrigal, have discretion in the investigation and enforcement of the law. But, "[a]lthough the police are necessarily afforded wide discretion in performing their duties, that discretion does not extend to discriminating against or harassing people." Geinosky, 675 F.3d 743, 747 (7th Cir. 2012). Defendants speculate in their motion as to potential rational explanations for Madrigal's differential treatment, but Plaintiff has clearly alleged that the sole basis for Madrigal's discrimination against Plaintiff was the illegitimate conspiracy to protect former-officer Miller from legal and financial liability, despite the facts that Plaintiff was the injured party and Miller was at fault. Defendants' factual speculation is improperly considered in a motion to dismiss. Miller violated several traffic laws and caused the crash and Plaintiff's injuries. Plaintiff, on the other hand, committed no traffic violations, yet Madrigal issued unfounded citations to Plaintiff. Moreover, Madrigal's issuance of the tickets to Plaintiff contradicts Defendants' explanation that Madrigal did not have contact with Plaintiff. In any event, at the pleading stage, Plaintiff's allegations must be taken as true and construed in the light most favorable to Plaintiff. Defendants' challenge to the Plaintiff's allegations and attempt to inject speculative factual disputes cannot serve as a basis to dismiss Plaintiff's claim.

### 3. Plaintiff's Fourth Amendment Claim Should Not Be Dismissed

A Fourth Amendment claim is based on a seizure without probable cause. Plaintiff has

clearly alleged a lack of probable cause for the citations and prosecution Madrigal instituted against Plaintiff. Am. Comp., ¶ 14, 21, 33, 42, 45. Plaintiff further alleged that he was required to attend a hearing and respond to the false allegations, constituting a deprivation of his liberty. Id., ¶ 34. Defendants argue that Plaintiff has not alleged a seizure as required for the Fourth Amendment claim. However, whether unfounded criminal prosecutions constitute a deprivation of liberty remains an unsettled question of law. The Seventh Circuit has recognized a circuit split on whether "a requirement to appear in court is a seizure." Smith v. City of Chicago, 3 F.4th 332, 342-43 (7th Cir. 2021). The Seventh Circuit held in Smith that standard bond conditions including a requirement to appear in court do not constitute a seizure, but a petition for writ of certiorari has been filed and is pending on this question.[1] And in McDonough v. Smith, 139 S. Ct. 2149 (2019), the Supreme Court noted that "[t]hough McDonough was not incarcerated pending trial, he was subject to restrictions on his ability to travel and other "'restraints not shared by the public generally.'" Id., 139 S. Ct. at 2156, FN4. The Seventh Circuit is an outlier from the other federal circuits that have held that a criminal prosecution can be the basis for a Fourth Amendment claim. Manuel v. City of Joliet, Ill., 137 S.Ct. 911, 916-917 (2017). Therefore, Plaintiff seeks to preserve this claim as alleged in his complaint, pending decision of the legal question of what constitutes a deprivation of liberty for a Fourth Amendment claim.

### 4. Plaintiff's Conspiracy Claim is Sufficiently Pleaded

Plaintiff's conspiracy claim is based on Defendant Miller and Madrigal's agreement to wrongfully fault Chmielowicz for the crash that Miller caused when Miller negligently and illegally merged into traffic and collided with Chmielowicz. A section 1983 conspiracy claim is based on underlying constitutional tort committed by multiple actors, working in concert and by

---

[1] https://www.supremecourt.gov/DocketPDF/21/21-700/199375/20211109111144182_completeCert.pdf

agreement. "To establish conspiracy liability in a § 1983 claim, the plaintiff must [allege] that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." Sanchez v. Vill. of Wheeling, 447 F. Supp. 3d 693, 705 (N.D. Ill. 2020), citing Beaman v. Freesmeyer, 776 F.3d 500, 510 (7th Cir. 2015).

There is no heightened pleading standard for a conspiracy claim. The plaintiff need only plead the basic who, what, and when to put the defendants on notice of the claim. "[T]he Seventh Circuit has explicitly rejected the existence of a heightened pleading standard for conspiracy claims: '[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with.'" Boothe v. Sherman, 66 F. Supp. 3d 1069, 1078 (N.D. Ill. 2014), citing Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir.2002; Thomas v. City of Blue Island, 178 F. Supp. 3d 646, 654 (N.D. Ill. 2016) (citing Seventh Circuit cases). This remains the standard even after Twombly and Iqbal. Boothe, 288 F.3d at 1078. The court in Thomas, denied the defendants motion to dismiss the conspiracy claim based on the plaintiff's allegations that defendant police officers conspired with politically-connected witnesses/persons-of-interest, in a hit-and-run criminal investigation in order to conceal the identity of the driver and shield them from criminal and financial liability. Thomas, 178 F. Supp. 3d at 654-55.

Plaintiff's allegations of the cover-up of Miller's wrongdoing and false accusations of Plaintiff meet the conspiracy pleading standard by alleging those involved, the purpose of the conspiracy, and when the agreement was made. Plaintiff's complaint alleges that Madrigal, a current Chicago police officer, and Miller, a former Chicago police officer, (i.e. "the who") spoke when Madrigal responded to the scene of the collision on September 26, 2019 (i.e. "the

when"). Defendants knew that Plaintiff sustained injuries that required him to be taken to the hospital. Defendants then proceeded to falsely report that Plaintiff caused the accident and violated various traffic laws (i.e. "the what" and specific overt acts). They did so to protect Miller from legal and financial consequences of his wrongful conduct based on Defendants' affiliation as police officers (i.e. "the what"). Madrigal also failed to get Plaintiff's account of what occurred, even though he issued him citations in furtherance of the agreement with Miller.

### 5. The City of Chicago Is Properly Named as a Defendant

Defendants correctly note that Plaintiff has not alleged a <u>Monell</u> claim against the City of Chicago. Defendant City of Chicago is included based on the Illinois Tort Immunity Act which empowers and directs municipalities to pay any tort judgment or settlement for which an employee, acting in the scope of their employment, is found liable. 745 ILCS 10/9-102. Plaintiff has alleged that Defendant Madrigal was acting in the scope of his employment when he committed the acts giving rise to Plaintiff's claims. Am. Comp., ¶ 8, 46-47. Defendants do not dispute that Madrigal was acting in the scope of his employment to trigger indemnification; rather, they argue that Plaintiff's claims against Defendant Madrigal should be dismissed, so there is no basis for indemnification. As Plaintiff has demonstrated, his claims against Madrigal should not be dismissed, and therefore, neither should the indemnification claim against the City of Chicago.

### CONCLUSION

Plaintiff has alleged that Defendant Madrigal violated his equal protection rights by abusing his position as a police officer to falsely charge Plaintiff with traffic violations and report that Plaintiff caused the collision with Defendant Miller for the improper purpose of protecting Miller, a fellow police officer. Inherent in these allegations is a conspiracy by

Defendants Madrigal and Miller. Based on Plaintiff's allegations, Defendant City of Chicago must indemnify Madrigal. Therefore, Defendants' motion to dismiss should be denied in its entirety. Alternatively, if the Court finds that Plaintiff has not plead his claims with sufficient specificity, the Court should grant Plaintiff leave to file an amended complaint.

Respectfully submitted,

By: s/ Amanda S. Yarusso
For Plaintiff Scott Chmielowicz

Amanda S. Yarusso
111 W. Washington St, #1500
Chicago, IL 60602
773-510-6198
amanda.yarusso@gmail.com

Brendan Kevenides
Freeman Kevenides Law Firm LLC
120 S State Street, Suite 200
Chicago, IL 60603
312-629-1901
brendan@fklawillinois.com